THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MORRIS GOLDFELD, Appellant.

Fourth Department, December 9, 1977

### APPEARANCES OF COUNSEL

*Paul R. Shanahan* and *Philip Hillsberg* for appellants.

*Richard A. Hennessey, Jr., District Attorney (William Fitzpatrick* and *John Cirando* of counsel), for respondent.

### OPINION OF THE COURT

CARDAMONE, J. P.

In the space of two years, 32 fires occurred in 24 separate buildings, 21 of which were owned by appellant, Morris Goldfeld, in the City of Syracuse. Several of the properties burned on more than one occasion, one burned four times. As a result, the Onondaga County Grand Jury handed down a 66-count indictment charging Goldfeld, and two codefendants, George Giordano and Glen Milyon, with the crimes of arson in the second degree (20 counts), arson in the third degree (12 counts) and conspiracy in the second degree (34 counts). Upon appellant's motion the trial court granted a severance of appellant's trial from the codefendants.

The first 64 counts of this 66-count indictment relate to the 32 fires that occurred between May 26, 1973 and June 24, 1975 in which appellant was charged either with arson in the second degree or arson in the third degree and conspiracy in the second degree. The remaining two counts (Counts 65, 66) charge the appellant with conspiracy, second degree, in connection with two premises where no fire occurred. The prosecution contends that appellant conspired with Giordano who arranged for Milyon and others to burn certain properties owned by Goldfeld, enabling him to collect fire insurance proceeds. At the trial the prosecution offered testimony demonstrating proof of ownership by appellant of the properties in the indictment; testimony by tenants of the properties concerning the various fires that occurred; testimony by fire department investigators regarding the incendiary nature of the fires; evidence that the appellant did receive insurance proceeds as a result of the fires; extensive testimony by Giordano chronicling the scheme to burn appellant's buildings; and two tape recordings of conversations between Giordano and the appellant.

Following a six-week trial, the jury returned verdicts finding appellant guilty as charged on 63 of the 66 counts. On two counts where he was charged with arson, second degree, appellant was found guilty of arson in the third degree (Counts 3 and 63) and he was acquitted on one count of conspiracy in the second degree (Count 65). Appellant was sentenced to concurrent terms of imprisonment with a minimum of six years and a maximum of 25 years on each of the 18 counts of arson in the second degree; an indeterminate term with a maximum of 15 years on each of 14 counts of arson in the third degree; an indeterminate term with a maximum of four years on each of 33 counts of conspiracy, second degree. Fines totaling $288,710 were also imposed upon appellant.

On this appeal appellant raises six points for us to review. He contends that the trial court erred in (1) denying appellant's motion to dismiss the indictments on the ground that, as a matter of law, there was insufficient proof of corroboration of the accomplice's testimony; (2) failing to marshall the evidence for the jury to the extent necessary to "explain the application of the law to the facts" as mandated by CPL 300.10 (subd 2); (3) receiving in evidence over appellant's objection the tape recordings of alleged conversations between appellant and Giordano; (4) denying appellant's motion for mistrial based upon the unauthorized and prejudicial telephone communications with several of the jurors; (5) permitting the principal prosecution witness to testify from a copy of a bill of particulars prepared by the prosecution and (6) invalidly imposing fines in contravention of section 80.00 of the Penal Law. We find no error committed by the trial court with respect to any of these contentions. Because of the complex nature of this case and the evidentiary problems which it raises, we shall discuss each contention.

■ ■ Appellant asserts that the indictments should have been dismissed as a matter of law at the close of the evidence on the ground that there was insufficient proof of corroboration of the accomplices' testimony. Whether there is sufficient corroborating evidence to go to the jury is a question of law for the court; whether the testimony of the accomplice is sufficiently corroborated is one of fact for the jury (*People v Fiore*, 12 NY2d 188, 201-202). In order for the trial court to submit the question of guilt to the jury, it must be satisfied that there is some evidence corroborating the accomplices'

testimony which fairly tends to connect the appellant with the commission of the crime (CPL 60.22, subd 1; *People v Morhouse,* 21 NY2d 66; *People v Kampshoff,* 53 AD2d 325). The required evidence may be direct or circumstantial *(People v Mullens,* 292 NY 408). The corroborative evidence need not lead exclusively to an inference of appellant's guilt; nor must it "exclude to a moral certainty every hypothesis but that of wrongdoing. The test is less rigid" *(People v Kohut,* 30 NY2d 183, 193-194; *People v Kampshoff, supra,* p 332). As the Court of Appeals has stated, "even matters which in themselves may be of 'seeming indifference', 'so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between the defendant and the crime'" *(People v Daniels,* 37 NY2d 624, 629-630, quoting from *People v Morhouse, supra,* p 74 and *People v Dixon,* 231 NY 111, 116-117). However, the corroborative evidence must do more than simply show that the crime was committed. It must tend to show that the defendant was implicated in its commission *(People v Nitzberg,* 287 NY 183, 191-192) and connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth *(People v Daniels, supra,* p 630; *People v Dixon, supra,* p 116).

■ Appellant further urges that each charge must be considered separately in passing upon the issue of corroboration of the testimony of the accomplice and that each and every charge must be independently corroborated. Generally, where the principal witness is an accomplice, corroboration of his testimony is necessary on each separate count of the indictment *(People v Malizia,* 4 NY2d 22; *People v Mullens,* 292 NY 408, *supra).* Where, however, a common scheme or plan is established which includes the crimes charged, evidence corroborating the accomplice's testimony as to one crime may be used to implicate the defendant with the other crime contained in a separate charge. While the similarity of the separate crimes is insufficient by itself to connect appellant with the crimes, "if the connection between the crimes is coupled with the connection between appellants and one of the crimes, there results a connection, albeit an indirect one, between appellants and the other crime. This indirectness is a matter to be considered by the jury when weighing the sufficiency of the corroborative evidence" *(People v Chamberlain,* 38 AD2d 306, 311).

In *People v Luciano* (277 NY 348, 362) "[t]he similarity

between the crimes was so striking that the inference that they were connected together or parts of a common scheme is well nigh inescapable". A mere reading of the indictment and examination of the proof in the instant case inescapably lead us to conclude that for appellant to have 21 of his buildings burned in 29 separate incendiary fires within two years could not be mere happenstance of a coincidental nature. Rather, the fires, as the proof reveals, were of a similar pattern, i.e., every one commenced in an uninhabited portion of the building, and not to believe that they were part of a common scheme or plan defies belief.

■ Aside from accomplice Giordano's testimony, the prosecution offered independent evidence which it claims tends to connect appellant Goldfeld with the crimes charged. Included is proof of appellant's ownership of the properties, the incendiary nature of each of the 32 fires, the fact that appellant collected insurance proceeds from 25 of the 32 fires, the fact that many of the burned premises had numerous housing code violations pending against them and that some of the fires broke out on the premises shortly after appellant received notice of the violations, and that appellant Goldfeld had access to keys to the uninhabited apartments where the fires occurred and that following the fires tenants testified that previously locked doors were found unlocked. The most persuasive corroborative testimony, however, was the tape recordings of the conversation between the accomplice Giordano and the appellant Goldfeld. We have listened to the tapes in the same manner as they were heard by the jury and find them audible and, in fact, some portions which the transcript denotes as inaudible are intelligible. After hearing the tapes we are thoroughly convinced of their inculpatory nature. The taped conversations clearly reveal appellant Goldfeld's knowledge of and participation as the moving force in the conspiracy to commit arson. The evidence necessary to corroborate an accomplice may be supplied by the appellant himself *(People v Burgin,* 40 NY2d 953; *People v Robertson,* 12 NY2d 355). Thus, these tapes are sufficient to connect appellant to the crimes of arson and conspiracy and adequately corroborate the accomplices' testimony *(People v Kee,* 45 AD2d 704). The existence of "so practicable and concrete a plan" by appellant and Giordano to have appellant's buildings burned in order to collect substantial amounts of fire insurance proceeds is "without more an adequate basis for the jury's finding of participa-

tion" by appellant Goldfeld "in the planned felonious conduct which the accomplice witnesses attributed to him". Once the conspiracy involving "many effectuated similar crimes" and appellant's connection with it has been established, such is sufficient for the jury to convict appellant of each crime charged (*People v Henderson*, 298 NY 462, 467; *People v Luciano*, 277 NY 348, 359, *supra).*

■ ■ Appellant contends that the trial court's failure to marshall the evidence by instructing the jury concerning the application of the law of corroboration to the relevant facts violated CPL 300.10 (subd 2) and constituted reversible error. Under the Criminal Procedure Law the Trial Judge must "explain the application of the law to the facts, but it need not marshall or refer to the evidence to any greater extent than is necessary for such explanation" (CPL 300.10, subd 2; *People v Clayborn*, 50 AD2d 952, 953). Here the Trial Judge ruled that appellant's confederates were accomplices as a matter of law and he charged the jury that their testimony must be corroborated. He further charged the relevant legal principles regarding corroboration. At appellant's request the Trial Judge gave additional charges with respect to the legal principles of corroboration, but refused appellant's further request to instruct the jury that it could not consider certain evidence as corroborative of the accomplices' testimony. We find no error in the trial court's charge. It marshalled the evidence to the extent necessary to "explain the application of the law to the facts". There is no requirement that the court enumerate the items of evidence which the jury might consider as corroborative of an accomplices' testimony (*People v Horton*, 19 AD2d 80, 85-86, affd 18 NY2d 355, cert den 387 US 934; cf. *People v Baker*, 23 NY2d 307, 325).

We turn next to the admission into evidence of the tape recordings between appellant Goldfeld and the accomplice, Giordano. An investigator-technician in the Intelligence Section of the Syracuse Police Department met with Giordano on June 25, 1975 and placed a transmitter on Giordano. The investigator then followed Giordano in an unmarked police vehicle equipped with a receiver and recording unit. The transmitter activated a recorder and enabled the investigator simultaneously to hear and record the conversations between Giordano and appellant. Later, the investigator made a duplicate recording of the tape and placed the copy and the original tape, marked with the date and time, in a locked steel

filing cabinet in police custody. The keys to the cabinet were stored in a locked desk. The next day the same procedure was repeated. On April 26, 1976 the investigator brought the tapes to the District Attorney's office. The investigator testified at the trial that these tapes contain a true and accurate recording of the conversations, appeared the same as when he originally made and stored them and showed no indication of alteration. These two tapes were admitted into evidence.

Appellant contends that the admission into evidence of the tape recordings was error for two reasons. First, because of the failure to conform with the sealing requirements of CPL 700.50 (subd 2) and, second, that there was a failure to take stringent protective measures to assure their safekeeping. Neither argument has merit. Where, as here, one of the parties to a monitored conversation has consented to the overhearing of that conversation by persons not present, the nonconsenting party's right to privacy protected by the Fourth Amendment has not been violated (*On Lee v United States,* 343 US 747; *People v Gibson,* 23 NY2d 618; *People v Brannaka,* 46 AD2d 929). Because one of the parties to the taped conversation consented, the tape recordings were not "intercepted communications" (CPL 700.05, subd 3, par [b]). Therefore, no eavesdropping warrant was required, nor were the sealing safeguards of article 700 applicable (*People v Smith,* 58 AD2d 1005; cf. *People v Sher,* 38 NY2d 600; *People v Nicoletti,* 34 NY2d 249). Nevertheless, to prevent possible alteration, manipulation or editing of recorded conversations outside the purview of CPL article 700, the prosecution must demonstrate that the tapes produced are a true, accurate and unaltered recording of the overheard conversation. The proof here properly established an unbroken chain of custody of the tapes. Further, appellant did not contend that the tapes were altered. The trial court, satisfied that the tapes were adequately safeguarded and were a true and accurate recording of the conversation between appellant and Giordano, properly admitted them.

During the trial, the Trial Judge met individually with six jurors in his chambers pursuant to their request. Several jurors stated that they had received anonymous telephone calls which impugned appellant's character and during which calls Goldfeld was characterized, among other things, as a "child abductor and an arsonist". The Trial Judge interviewed each juror individually in chambers in the presence of the

attorneys, court attendants and the appellant. The Trial Judge and the attorneys questioned the jurors as to whether their judgment had been affected by these telephone calls. On the following morning the Trial Judge met with another juror who reported that his wife had received a telephone call the previous morning. A defense motion for a mistrial based upon the telephone calls was denied.

CPL 280.10 (subd 1) provides that a trial court must order a mistrial upon motion of the defendant "when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him of a fair trial". Even a juror who has formed an opinion or impression as to the guilt or innocence of the defendant may be selected to sit, if he believes that it will not influence his verdict and that he can render an impartial verdict according to the evidence *(People v Genovese,* 10 NY2d 478, 481-482; see, also, *Irvin v Dowd,* 366 US 717, 723). The Court of Appeals considered the question of whether anonymous communications by telephone with several jurors required a new trial and held that: "The incident resulted in no palpable prejudice to defendant since each of the jurors during the trial was questioned whether he could sit impartially and confine his verdict to the record evidence, and each answered in the affirmative, despite the telephone calls * * * This was after each related his own telephone conversations with the anonymous caller and with his fellow jurors. This cures the possible harm under the accepted precedents because the questioning of the jurors and admonition to them serve a real purpose in drawing their attention to the unfairness of their considering anything but the record evidence [citations omitted]" *(People v Sher,* 24 NY2d 454, 457).

The record discloses that the trial court conducted a full investigation into the possible prejudicial effect of the telephone calls and individually examined each of the jurors with both counsel present and assisting in the inquiry (see *People v Mordino,* 58 AD2d 197). The trial court properly denied the motion for a mistrial based upon the responses given by the jurors which revealed that no prejudice resulted from the telephone calls.

Next, we consider defense counsel's objection during the direct examination of George Giordano that the witness was

referring to and reading from notes. These notes, marked as Exhibit 77, were identified as the bill of particulars requested by the appellant with annotations prepared by the witness and the District Attorney. After he stated that he was unable to remember each particular instance without notes the trial court permitted Giordano to refer to them. Defense counsel later objected to the use of Exhibit 77 during direct examination on the ground that it was not apparent whether the witness was testifying from something he knew or something he found on a paper prepared by the District Attorney. After a discussion between the attorneys and the court, the trial court ruled that the witness would be permitted to use Exhibit 77 to refresh his recollection, if the witness stated that this was necessary, and after refreshing his recollection, "he is going to have to fold it and put it down and testify". The witness then continued his testimony in accordance with the Judge's ruling.

 A witness may, for the purpose of refreshing his memory, use any memorandum, whether made by himself or another *(McCarthy v Meaney,* 183 NY 190; *Howard v McDonough,* 77 NY 592; Richardson, Evidence [10th ed] § 465). Appellant contends that the use of Exhibit 77 amounted to reversible error because the witness was allowed to "read his testimony from a prepared statement, rather than to * * * testify from his memory". Appellant also implies that the statement may not have been a correct reflection of the witness' memory because it was largely prepared by the prosecution. Concern was expressed by this court in *Brown v Western Union Tel. Co.* (26 AD2d 316, 320) as follows: "There is danger in allowing a witness to refresh his memory by a statement because he may not remember the facts in issue but may very well testify to what he reads in the statement. In the case of refreshing recollection, the real problem is whether the writing is offered in good faith and whether it is at all likely to stimulate the memory of the witness". In *Brown,* the witness had *no* recollection of the events referred to in the statement. The prosecution has pointed out that the testimony of the witness contains much more detailed information than the information present on Exhibit 77. We believe that the record amply demonstrates that the exhibit was properly offered in good faith and used to refresh the recollection of this witness. We find that Giordano did not testify solely on the basis of the exhibit, but used it merely to

stimulate his memory in this complex criminal trial involving many separate occurrences.

Finally, prior to sentencing, the trial court asked appellant whether he had returned any of the money received as a result of the fires. The defense counsel stated that as a result of a pending civil action, an escrow account was created. The Trial Judge then made findings of fact for the record. He found that appellant owns property within the City of Syracuse and that he did plan and scheme with others to damage or destroy the property with the sole purpose of obtaining insurance proceeds. Further, that the appellant did obtain insurance proceeds and did make a pecuniary gain in direct proportion to the insurance payments received. The trial court, thereupon, imposed a fine on the defendant on each arson count which was equivalent to the amount of insurance proceeds received by the defendant. The fine totaled $288,710.

Appellant contends that the portion of the sentence which imposes a fine is invalid as a matter of law on the ground that the court made no finding of financial gain by the defendant as required by subdivision 3 of section 80.00 of the Penal Law. Appellant's contention is based on the premise that the escrow arrangement and the pending civil suit result in an inability to determine the pecuniary gain of the defendant. The fact that the defendant may be required to refund the insurance proceeds as a result of the pending civil action is irrelevant to the imposition of the fine because the statute refers to a refund of money to the victim "prior to the time sentence is imposed" (Penal Law, § 80.00, subd 3). This provision encourages a voluntary relinquishment of criminal proceeds prior to sentencing in order to avoid imposition of a fine which might be fixed at double the amount of the appellant's gain from the commission of the crime (Penal Law, § 80.00, subd 2). Since the record contained evidence to support a finding as to the amount of appellant's gain, no hearing was required (Penal Law, § 80.00, subd 3).

For the reasons stated, the judgment of conviction should be affirmed.

HANCOCK, JR., DENMAN and WITMER, JJ., concur.

Judgment unanimously affirmed.