THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
MAURICE MILLER, Appellant.

Third Department, November 14, 1945.

*LeRoy Stein,* attorney (*Riley H. Heath* and *J. R. Hoover* of counsel), for appellant.

*Walter B. Reynolds, District Attorney,* for respondent.

LAWRENCE, J.   Defendant claims that several errors occurred during the trial which deprived him of a fair trial.

Defendant asserts that it was error for the trial court to order the defendant into custody on the first day of the trial in the presence of the jurors, some of whom had been accepted. This would seem to be discretionary under section 422 of the Code of Criminal Procedure. Discretion was not abused.

The defendant signed a confession to the effect that he performed an abortion upon one Florence Lee and was paid $50 for so doing. Upon the trial he repudiated the confession and took the position that he signed it upon the understanding that there would be no publicity and that he would not be prosecuted therefor. Preliminary hearing was held upon the question of its admission. It was properly submitted to the jury.

A so-called dying declaration was admitted in evidence in corroboration of the confession and as independent testimony. Such statement was taken a week before death. It states that it was given of the patient's " own free will, knowing at the time that she is liable to die." In it she stated that she went to the defendant for an abortion, that he used a catheter and was paid $50. The statement was secured by an officer of the Police Department on January 21, 1945. His testimony of statements made to and by the patient is as follows:

" A. I said to Mrs. Lee, ' You are in a serious condition.' She said, ' Yes, I know I am.' I told her who I was and what I was there for and I told her at the time that I was going to take a statement from her, with the knowledge that she knew she could not get well and was going to die, and she gave me this question and answer statement. Q. Just what did you say to her about dying, and what did she say to you? A. She says, ' My doctor has talked to me and told me that I am in a serious condition ' and that she, herself, was of the opinion that she had no chance to recover. Q. Did she state to you in so many words that she believed she had no chance of recovery? A. That's right." The next day, in the presence of the patient, the following question was inserted in the so-called dying declaration over the signature of the patient: " Q. Mrs. Lee, you have made this statement with the knowledge that you are going to die? A. Yes, sir. F. L."

The testimony as to what the patient thought her condition was is weak. The police officer says she realized she could not recover. The statement was made in the presence of a stenographer for the District Attorney, and the attending physician, Dr. Mark. The stenographer and Dr. Mark were each sworn upon the trial but made no statements with regard to taking the so-called dying declaration.

The statement referred to as a dying declaration shows that the declarant knew she was in a serious condition. She does not state that she realized that she was about to die or that she had given up hope of a recovery.

Fear or even belief that illness will end in death will not avail of itself to make a dying declaration, but there must be settled, hopeless expectation that death is near at hand and what is said must have been spoken in the hush of its impending presence. (*Shepard* v. *United States*, 290 U. S. 96; *People* v. *Falletto*, 202 N. Y. 494; *People* v. *Smith*, 245 App. Div. 69 [Third Dept.]; *People* v. *Ludkowitz*, 266 N. Y. 233.)

In the case at bar the declaration was admitted over objection. Exception was taken.

In the charge to the jury the court stated that the declaration was equivalent to the evidence of a living witness under oath. The defendant took an exception to this charge and requested the court to charge that the law does not regard such declarations as of the same value as the testimony of a witness given in open court, under oath. This exception and request followed immediately upon the main charge. Thereupon the court declined to charge further than he had as he felt that he had

covered the requirements. Thereafter the court charged several requests by the defendant bearing upon the value of dying declarations but the charge, as first requested, should have been granted. The refusal to do so may well have influenced the jury.

An autopsy was performed on the day after death. Several doctors were in attendance. Two of them had been physicians treating the patient and one of them was a witness for the defendant. The doctor performing the autopsy and the other doctors who appeared for the People stated, in effect, that in their opinion the cause of death was acute peritonitis following an abortion. The conclusion of the doctors who were sworn on behalf of the People was based upon a hypothetical question which assumed that an abortion had been performed. This must have been based on the confession taken on January 22, 1945, or upon the so-called dying declaration, taken January 21st, and completed January 22, 1945, or upon the statement made by the patient to Dr. Mark and not a part of the declaration. Some of the doctors stated that a history of the case was indispensable in order to establish that an abortion had been performed. Dr. Wall, who attended the autopsy, testified on behalf of the defendant that he found evidence of an abortion but could not determine whether it was spontaneous or induced. He stated that he found no evidence of the use of any instrument.

The statement by the patient to Dr. Mark, which was not a part of the so-called dying declaration, was made during the course of treatment. This was to the effect that defendant had aborted her. That would be hearsay against the defendant.

A dictaphone had been made use of at a conference when an examination of defendant was being conducted in the District Attorney's office. The record made was reproduced upon the trial by use of a phonograph. The proof was insufficient to identify the speakers. In the absence of such proof the phonographic record was not competent.

Objection was made to the statement as a dying declaration and objection was also made upon the ground that it was based upon testimony admitted in violation of sections 352 and 354 of the Civil Practice Act, there being no waiver of those statutory provisions.

The dying declaration was improperly received without further testimony of the circumstances under which it was given. This, together with the statement by the court regarding its value, was prejudicial and requires a reversal of the judgment of conviction. Forms of law cannot be ignored even though

the court may be convinced of guilt. (*People* v. *Nuzzo*, 294 N. Y. 227.)

The judgment of conviction should be set aside and a new trial granted.

All concur.

Judgment of conviction reversed on the law and facts, and a new trial granted.