## The People of the State of New York, Respondent, v Leo Arena, Appellant.

Fourth Department, December 15, 1978

APPEARANCES OF COUNSEL

*Peter C. Sulli, Sr.,* for appellant.

*Lawrence T. Kurlander, District Attorney (Sharon Stiller* of counsel), for respondent.

## OPINION OF THE COURT

HANCOCK, JR., J.

■ The question presented is whether the authenticating testimony of a participant in a conversation can, without additional proof, establish a sufficient foundation for the admission of a tape of the conversation. We hold that under the circumstances in this case such testimony is sufficient.

A jury has convicted defendant, Leo Arena, of attempted grand larceny by extortion and attempted coercion in connection with an effort to "shake down" Daniel Hartnett, the proprietor of a massage parlor. The main item of evidence against the defendant was a tape recording of a conversation on May 20, 1977 between Hartnett and the defendant. Hartnett testified that: (1) he was instructed in the use of the taping device by a detective; (2) the tape machine was operating during the entire time that Arena was in his office; (3) he himself operated the device during the conversation with Arena and neither he nor anyone else manipulated the controls of the machine during the conversation; (4) he had listened to the entire tape on two occasions and that, based on his "recollection of the conversation with Mr. Arena on * * * May 20, 1977 at [his] office in the Renaissance Spa," the recording "fully and accurately reflect[ed] the entire contents of that conversation." Although perhaps not necessary, the prosecution elicited the following additional testimony from the witness which emphasized the significant points:

"Q. Is there any portion of this tape which does not accurately reflect that conversation?

"A. None.

"Q. Is there any portion of your conversation with Mr. Arena that you recall conducting on May 20, 1977 which is omitted from the tape?

"A. No."

In objecting to the admission of the tape and the typewritten transcript made from it, defendant did not challenge the authenticity or accuracy of either. Indeed, in his summation

defendant's attorney all but conceded their accuracy and repeatedly requested the jurors to listen to the tape as many times as they pleased so that they would perceive that it was Hartnett and not Arena who was doing most of the talking and hear the tone of Arena's voice when he made certain statements.

■ ■ The dissenters would hold that because some additional proof to supplement Hartnett's testimony was not given, it was an abuse of discretion for the trial court to have admitted the tape in evidence. They recognize the well-established rule that the sufficiency of the foundation to be required for the admission of real evidence including tapes is a matter usually within the trial court's discretion (see *United States v Craig,* 573 F2d 455, 479; *United States v Haldeman,* 559 F2d 31, 109, cert den *sub nom. Mitchell v United States,* 431 US 933; *Brandow v United States,* 268 F2d 559, 567; *People v Gucciardo,* 77 Misc 2d 1049). Drawing an analogy between the tape recordings and "fungible items such as drugs" or "chemical specimens, both subject to easy and material alteration", however, they would require the party offering the evidence to meet "a special burden of demonstrating that the evidence is unadulterated."

In our opinion the "fungible items" cases are not analogous. In *People v Julian* (41 NY2d 340 [involving various drugs]), *Amaro v City of New York* (40 NY2d 30 [involving a blood sample]) and *People v Connelly* (35 NY2d 171 [involving cocaine]), the problem was one of establishing that the substance which had been delivered for analysis (i.e., the "green vegetable matter" or "white powder" in *People v Julian [supra]* and *People v Connelly [supra];* and the blood in *Amaro v City of New York [supra])* was in fact a sample of the substance seized or purchased, or the blood taken. Because of the unremarkable qualities and the uniform appearance of the substances involved and the lack of any distinguishing characteristics, the authentication of a particular sample tested as the substance involved in the case could only have been accomplished by tracing the actual substance through a chain of custody from the undercover agent who purchased the drugs or the police officer who seized the drugs or the doctor who took the blood to the person who performed the tests in the laboratory. The authentication of a tape recording of a conversation like the authentication of a photograph of an accident scene presents no such problem. Both the recording

and the photograph are reproductions of actual events, sounds or scenes, which someone has witnessed and can remember. The identifying characteristics of the tape are the voices of the participants, the peculiarities of their speech, and the content of the conversation recorded. The photograph depicts the contours and details of the scene which the witness has observed. Through the recollection and recognition of these identifying and, for the most part, unique features the witness can state whether the recording or the photograph accurately reproduces what was to be heard or seen. To be sure, both the tape recording and photograph are susceptible to alteration but the recollection of the witness who remembers what was said and by whom or knows what the scene looked like is protection against it.[1]

The unequivocal and positive testimony of the participant Hartnett that the tape was a complete and accurate recording of the entire conversation constituted prima facie proof that the tape was trustworthy and not "adulterated." Where, as here, no suggestion was ever made that the tape was incomplete or inaccurate in any particular, or that it had been altered, we think (contrary to the view of the dissent) that the minimal standards of admissiblity were satisfied and that the question of whether or not to receive it was one for the Trial Justice in the exercise of his sound discretion.

Although it is well established that the admissibility of a sound recording is a discretionary matter, the precedents in this State have not set forth specific guidelines to assist the court (see, generally, *People v Lubow,* 29 NY2d 58; *People v Dinan,* 15 AD2d 786, affd 11 NY2d 350; *People v Feld,* 305 NY 322; *People v Goldfeld,* 60 AD2d 1, 9; *Matter of Anonymous,* 286 App Div 161, mot for lv to app den 968; *People v Hornbeck,* 277 App Div 1136; *People v Miller,* 270 App Div 107; *People v Gucciardo,* 77 Misc 2d 1049, *supra; People v Velella,*

---

1. "It is true that a photograph can be deliberately so taken as to convey the most false impression of the object. But so also can any witness lie in his words, and when a qualified observer is found to say, 'This photograph accurately represents the fact which I observed,' it is as if he had said, 'The following words accurately represent the fact I observed.' In these circumstances, excluding the photograph as misleading may be begging the very question which the jury ordinarily have to decide; it may be as anomalous as if the judge were to order a witness from the stand because he was believed by the judge to be lying. Actual perjury should not be thus determined in advance by the judge—not more for photographic than for verbal testimony." (3 Wigmore, Evidence [Chadbourne rev.], § 792, subd [3].) The same reasoning should, logically, apply to the admission of tape recordings.

28 Misc 2d 579; *Frank v Cossitt Cement Prods.*, 197 Misc 670; cf. *Boyarsky v Zimmerman Corp.*, 240 App Div 361, involving the admission of moving pictures; cf. *People v Higgins*, 89 Misc 2d 913, 918, holding that a video tape is admissible where a proper foundation is laid by the testimony of a photographer, technician, engineer, or anyone who observed the events showing that the tape is a true, fair and accurate representation of the events, people, or scene depicted). The general rule is stated in New York Jurisprudence (vol 21, Evidence, § 371): "The reproduction of the sounds of an original event, recorded on a wire recorder, if relevant, competent from the standpoint of the manner in which the recording was obtained, and verified as a true representation, is admissible." (Footnotes omitted.)

While the established Federal rule is that the admissibility of sound recordings is discretionary (see, e.g., *United States v Craig*, 573 F2d 455, *supra; United States v Haldeman*, 559 F2d 31, *supra; Brandow v United States*, 268 F2d 559, *supra),* Federal courts have required that "the government 'produce clear and convincing evidence of authenticity and accuracy' as a foundation for the admission of such recordings" *(United States v Fuentes*, 563 F2d 527, 532, cert den *sub nom. Sansone v United States*, 434 US 959, quoting *United States v Knohl*, 379 F2d 427, 440, cert den 389 US 973). However, the cases do not establish "inflexible criteria applicable to all cases." *(United States v Fuentes, supra,* p 532.)[2] Proof of authenticity and accuracy sufficient for admission of tape recordings of conversations has been supplied by the testimony of a participant to the conversation in conjunction with that of an expert who testified that in his opinion the tapes had not been altered (see *United States v Craig*, 573 F2d 455, *supra);* by the testimony of the undercover agent who observed the conversation and who made the recording (see *United States v Mc-Millan*, 508 F2d 101, cert den 421 US 916); by the testimony of a

---

2. Some commentaries (see 17 Am Jur Proof of Facts, pp 44, 61; 29 Am Jur 2d, Evidence, § 436) refer to a suggested foundation for the admission of a recording based on *United States v McKeever* (169 F Supp 426, revd on other grounds 271 F2d 669), i.e., that (1) the recording device is capable of taking testimony, (2) the operator of the device is competent, (3) the recording is authentic and correct, (4) changes, additions, or deletions have not been made, (5) the recording has been properly preserved, (6) the speakers are properly identified, and (7) the testimony was voluntary and made without improper inducement. In *Fuentes,* however, the Second Circuit Court of Appeals stated that "this Circuit has never expressly adopted a rigid standard for determining the admissibility of tape recordings." (563 F2d, p 532.)

participant in conjunction with that of the police officer who retrieved the tape and listened to it the day after it was made (see *United States v Buzzard,* 540 F2d 1383, cert den 429 US 1072); and by that of a participant alone (see *Brandow v United States,* 268 F2d 559, *supra; Monroe v United States,* 234 F2d 49). The Federal decisions indicate that a determination of admissiblity should, for the most part, be based on an examination of all of the relevant circumstances (see, generally, *United States v Craig, supra; United States v Fuentes, supra; United States v Haldeman, supra; United States v Buzzard, supra; United States v McMillan, supra; Brandow v United States, supra; Monroe v United States, supra).*

■ Neither the Federal nor the State authorities support the proposition that a sufficient foundation cannot be established through a participant's testimony that: based on his clear recollection of the conversation and of the participants and the words that were spoken, and of the facts pertaining to the tape recording, including how and by whom it was made, the recording is an accurate and complete reproduction of all that was said. While it would have been better if the prosecution in the instant case had offered additional evidence, we cannot agree that in view of Hartnett's unequivocal testimony and the absence of any question concerning the accuracy, authenticity, or audibility of the tape, the court abused its discretion in receiving it.

The judgment should, therefore, be affirmed.

SIMONS, J. (dissenting). Defendant's conviction in this case rests on the testimony of one witness, that of complainant, supported by defendant's incriminating tape recorded statements. The tape's trustworthiness is crucial to sustain the judgment and we believe it was not admissible without clear and convincing evidence of its authenticity, evidence that was not supplied by the testimony of the complainant alone.

The complainant was Daniel Hartnett, proprietor of several businesses, including a spa offering customers "private unstructured encounter sessions," an adult book store and peep show and a movie theatre geared to a homosexual audience. Obviously a man in this line of work can have his problems with both law enforcement officials and competitors and Hartnett has had his. He has been arrested several times for obscenity and he has had to discharge about a hundred of the encounter session "hostesses" in the last five years because

they had been arrested for prostitution or other sex related offenses.

At the trial Hartnett testified that on two occasions defendant came to him and demanded protection money on behalf of unidentified persons. The first incident occurred on May 13, 1977 when defendant attempted to extort weekly payments of $300. After that Hartnett contacted the Monroe County Sheriff's Department and with the assistance of Sheriff's detectives he installed a cassette recorder in his office. Using that device, he recorded a subsequent conversation with defendant May 20, 1977 during which defendant repeated the extortion demands. Three detectives were present in an adjoining room at the time and after defendant left Hartnett's office, one of the detectives played a portion of the tape to insure that it had recorded the conversation; then he wrote the time and date on the cassette and took it with him.

At the trial Hartnett identified a cassette dated "5-20-77—12:15 p.m." which contained a tape recording and he testified that the enclosed tape completely and accurately recorded the conversation between defendant and himself on May 20. Defendant objected to the admission of the tape and a transcript of the conversation, contending that the People had not established a necessary foundation because they failed to prove where the tape had been during the nine months between May 20 and the time of the trial, that it was the same tape made by Hartnett and that it had not been tampered with during the interim. The tape recording had been in police custody during this nine months but there was no evidence to establish that it had been preserved safely because at the time of trial the officers involved in the case were under indictment, one of them for giving perjured testimony against this same defendant concerning an alleged extortion which in fact had never occurred (see *People v Malsegna*, 64 AD2d 1029).

Defendant's objection to the evidence should have been sustained because the People did not satisfy minimal standards for admissibility. Contrary to inferences in the majority opinion, the burden rested on the People to establish the trustworthiness of the evidence before it was received in evidence, not upon the defendant to disprove its accuracy.

Under the general rules, a party offering real evidence purporting to be associated with a crime must establish that the evidence is identical to that involved in the crime and that it has not been tampered with *(People v Julian,* 41 NY2d

340, 343-344, citing *People v Flanigan,* 174 NY 356, 368). When the object is a tangible item not subject to material alteration, its identification by witnesses presents no unusual difficulty. When the evidence consists of fungible items such as drugs, however, or chemical specimens, both subject to easy and material alteration, the party offering the evidence bears a special burden of demonstrating that the evidence is unadulterated (see *People v Julian, supra; People v Connelly,* 35 NY2d 171, 174-175).

The majority compare tape recordings with photographs but we do not find that analogy persuasive. Photographic evidence is something a lay juror can evaluate and other witnesses may impeach. Though a photograph may distort the view, its accuracy may be tested readily. Furthermore, in most cases, the photograph is a part of the complex of evidence, instructive but not decisive. Tape recordings are decidedly different. Even persons unschooled in their use may alter them easily and without risk of ready detection by the simple expedient of transferring a part of a conversation or recasting one side of it on a new tape. Moreover the tape recording may constitute full and complete evidence of the crime without further proof. Once before the jury it may lead inexorably to a conviction unless the defendant overcomes its effect.

Because of this possibility of tampering and also because a tape recording has such a strong impression upon a jury, the evidence of its authenticity and accuracy should be "clear and convincing" before the jury is permitted to hear the evidence *(United States v Fuentes,* 563 F2d 527, 532, citing *United States v Knohl,* 379 F2d 427, 440; see, also, *People v Goldfeld,* 60 AD2d 1, 9). In eavesdropping cases, authenticity is assured by compliance with the Criminal Procedure Law, the statutory requirements not only recognizing constitutional impediments to obtaining evidence by trespass but also mandating prompt sealing procedures to prevent tampering with the recordings (see CPL 700.50, subd 2; *People v Washington,* 46 NY2d 116; *People v Nicoletti,* 34 NY2d 249). When the recording is obtained by the consent of a participant in the conversation, the constitutional objections disappear but there exists the same requirement that the trustworthiness of the evidence be established before it is considered by the jury. This is not a matter of credibility, but of the authenticity for the trustworthiness of recording is not something the ordinary juror can decide on the basis of his

life experience. Thus, before the jury may have the tape a preliminary determination of admissibility must be made by the Trial Judge and in the proper exercise of his discretion he must find that the possibility of misidentification or alteration has been eliminated with reasonable probability.

The jury was not unaware of the problem in this case. After retiring to deliberate they returned to the courtroom with questions about the evidence and they asked to see the "signature" on the cassette. Although the marking on the cassette was the only possible evidence corroborative of trustworthiness and it was shown to the jury, it was evidence without probative value because a new tape could have been inserted easily in the marked cassette. The jury also asked where the tape had been during the nine months before trial. The record was silent on that point and the trial court so advised them. Having already admitted the evidence, it could only advise the members of the jury that they must determine if the tape was authentic and accurate. But that was the court's function, at least preliminarily, and the jury had no evidence before it to answer its understandable suspicions of the tape's untrustworthiness.

In the absence of New York authority on the subject, the majority rely upon several Federal decisions, as do we. But we interpret them to require greater proof of accuracy than the say-so of a participant in the conversation. Thus, in *Fuentes,* government agents testified about the details of making and sealing the tapes; in *United States v Craig* (573 F2d 455), an expert testified that in his opinion the tape was authentic and in *United States v Haldeman* (559 F2d 31, 109, cert den *sub nom. Mitchell v United States,* 431 US 933), there was extensive testimony of the making and preservation of tapes.

We do not suggest an inflexible rule for admissibility. "Clear and convincing" proof of authenticity may be supplied in several ways, but it will commonly be provided by a combination of the following: testimony from participants in the conversation, testimony of witnesses to the conversation or its recording, evidence of the chain of custody, or expert testimony. The party offering the evidence need not necessarily prove the chain of custody, although appropriate proof of the transcription and preservation of the taped conversation by itself may eliminate or minimize the opportunity for tampering and thus supply a necessary foundation for admission (see *People v Goldfeld,* 60 AD2d 1, *supra; United States v Fuentes,*

563 F2d 527, *supra; United States v Haldeman, supra).* Admissibility, however, is not established solely by testimony from a participant in the conversation, as was done here, after the tape recording had been available to several persons during an extended period of time (see *United States v Starks,* 515 F2d 112; *United States v McMillan,* 508 F2d 101, 104, cert den 421 US 916; see generally, Admissiblity of Sound Recordings in Evidence, Ann. 58 ALR2d 1024, 1032).

In most cases the requirement of additional proof, other than the testimony of a participant, will not impose any undue burden on law enforcement authorities familiar with the requirements of taking reasonable precautions to preserve evidence (see *People v Julian,* 41 NY2d 340, *supra).* In the few rare prosecutions, such as this one, in which the District Attorney finds it disadvantageous to swear the police officers having custody of the tape because they may not be credible witnesses, the necessary foundation may be supplied by expert testimony or other means (see *United States v Craig,* 573 F2d 455, 477-478, *supra).*

The judgment should be reversed and a new trial granted.

MARSH, P. J., and MOULE, J., concur with HANCOCK, JR., J.; SIMONS and SCHNEPP, JJ., dissent and vote to reverse the judgment and grant a new trial in an opinion by SIMONS, J.

Judgment affirmed.