**In re HUNTER STUDIOS, INC./Barkley Studios, Inc., Debtors.**

**Bankruptcy Nos. 886–61039–20, 887–70184–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Jan. 28, 1994.

Kenneth Walsh, Rosenberg, Rosenberg & Weiner, Brooklyn, NY, for Leslie H. Silverman.

Barry Seidel, Willkie, Farr & Gallagher, New York City, for Barry N. Seidel and others.

Stan Y. Yang and Scott Y. Stuart, Office of U.S. Trustee, Garden City, NY.

## DECISION AND ORDER ADDRESSING ATTORNEY'S RIGHT TO TESTIFY AND ADMISSIBILITY OF TAPE–RECORDED CONVERSATION

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court due to certain evidentiary issues which arose during

a hearing on a contested matter within the above-referenced case.

The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1) and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (N) and (O) of title 28.

The issues addressed in this opinion concentrate upon (A) the allowance of an attorney to testify as a witness, and (B) the admissibility of a recorded conversation.

### RELEVANT FACTS

In November of 1986, Hunter Studios, Inc. ("Hunter") filed a petition for bankruptcy relief under chapter 11 of title 11, United States Code ("Bankruptcy Code"). In February of 1987, Hunter's affiliate, Barkley Studios, Inc. ("Barkley"), also filed a petition for relief under chapter 11. The nature of the Hunter and Barkley corporations' businesses was the operation of photography studios. The Hunter and Barkley cases were substantively consolidated in October of 1987, and later converted to cases under chapter 7 of the Bankruptcy Code. In February of 1988, the Court entered an order which authorized the chapter 7 trustee to execute a sale ("Sale") of assets of Hunter and Barkley to Easterntronics Distributors, Inc. ("EDI").

By Order to Show Cause signed May 5th, 1992, Barry N. Seidel Esq. obtained a hearing on his motion for an order vacating the Sale ("Vacatur Motion"), holding the president of EDI, Mr. Leslie Silverman, in contempt of the Sale order, and for other relief. Mr. Seidel alleged that Mr. Silverman wilfully breached contracts to provide photographs for himself and his clients, which contracts Mr. Silverman assumed pursuant to the Sale. In March of 1993, the Court conducted at least two full-day hearings on the Vacatur Motion.

During the final hearing before the Court to date, Mr. Seidel called himself as witness to testify in the proceeding. Transcript of Hearing held March 19, 1993 at 113 (herein-

after "Tr. at ——"). Mr. Seidel additionally informed the Court of his intention of introducing into evidence a conversation(s) between himself and Mr. Silverman, which Mr. Seidel recorded on tape ("Recorded Conversation"). Tr. at 115. Discussion ensued among Mr. Seidel, his associate Gary Hirsch, Esq., Mr. Silverman's counsel, Rosenberg, Rosenberg & Weiner and the Court, as to the ability of Mr. Seidel to call himself to testify as a witness, the admissibility of the Recorded Conversation and the propriety of Mr. Seidel's actions. The Court afforded the parties the opportunity to brief the issues raised, and granted a continuance of the hearing pending its decision.

### ISSUES AT BAR

Essentially, the issues before the Court are: (A) whether an attorney who is representing a client may (i) continue representation and testify or (ii) withdraw from representation and testify; and (B) whether a conversation recorded without consent of all participants is admissible into evidence.

### LEGAL DISCUSSION

#### I. Mr. Seidel's Ability to Testify as a Witness

##### A. Mr. Seidel's Role in Connection with this Motion

■ Mr. Seidel's role in connection with this Vacatur Motion dictates his ability to testify as a witness. If Mr. Seidel is a pro se litigant, his ability to testify is absolute. *E.g., O'Reilly v. New York Times Co.*, 692 F.2d 863, 867 (2d Cir.1982). If, however, Mr. Seidel has been representing another person and/or entity, his ability to testify is governed by New York's Judiciary Law, *see* section I.B. of this opinion *infra*. In the latter case, his right to testify is considerably more limited.

■■ Fortunately, the answer to this inquiry concerning Mr. Seidel's capacity, as a pro se litigant or as an attorney representing another, was provided in his memorandum of law submitted in support of his right to testify as a witness, which states:

[The Vacatur] Motion was made and signed by [Mr. Seidel] personally *for himself, his wife and on behalf of "other consumers* similarly situated" who have suffered wrongs similar to those inflicted upon Movant by [Mr.] Silverman's actions. Memorandum of Law of in Support of Movant's Right to Testify, dated April 1, 1993, at 2 (emphasis added). Mr. Seidel also signed various papers which stated that he was acting on behalf of his wife and others.[1] Accordingly, the Court holds that Mr. Seidel's capacity in this matter is unquestionably as an attorney engaged in representing clients which include his wife and others (not named).[2]

## B. Rules Applicable to Testimony by an Engaged Attorney

The conduct of attorneys in New York is governed by the New York Code of Professional Responsibility which is set forth as an appendix to New York's Judiciary Law. *See* N.Y. Code of Professional Responsibility DR 1–101—9–102 (1993)[3] (hereinafter "N.Y.Code Prof.Resp.").[4] New York Code of Professional Responsibility Disciplinary Rules 5–101 and 5–102 address whether an attorney acting as an advocate may call him or herself to testify as a witness in the proceeding. N.Y.Code Prof.Resp. DR 5–101, 5–102.

Disciplinary Rule 5–101 instructs lawyers not to accept employment which contemplates the lawyer's acting before a court if it is known or is obvious that the lawyer ought to be called as a witness on behalf of the client. N.Y.Code Prof.Resp. DR 5–101. In relevant part, Disciplinary Rule 5–101 provides:

> A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on behalf of the client....

N.Y.Code Prof.Resp. DR 5–101 (1993).[5]

Disciplinary Rule 5–102, in distinction, applies where an attorney, *after* accepting employment in contemplated litigation, learns that he or she will or ought to be called as a witness on behalf of the client. N.Y.Code

---

**1.** *E.g.*, Document entitled Ex Parte Motion for Order of Seizure and Temporary Restraining Order, dated April 30, 1992, at 1 (stating, in the opening paragraph, "Barry N. Seidel, for himself and on behalf of other consumer creditors similarly situated, respectfully represents:"); Proposed Order submitted in connection with the Ex Parte Motion, signed April 30, 1992, at 1; Papers of Mr. Seidel in Support of Vacatur Motion, dated May 4, 1992, at 1 (stating, in the opening paragraph, Barry N. Seidel ... and Gretta Zibaida Seidel ... for themselves ... and on behalf of other creditors similarly situated").

**2.** Mr. Seidel concedes that he is not moving pro se but that he is represented by his firm, Wilkie, Farr & Gallagher, "and has appeared as a partner of such firm." Memorandum of Law in Support of Mr. Seidel's Right to Testify as a Witness in the Proceeding, dated April 1, 1993, at 3. But whether Mr. Seidel is himself represented by counsel, has no bearing upon his ability to testify in this matter. As discussed below, it is his representation of others, which precipitates the application of the Judiciary Law. Furthermore, the Court finds it implausible that Mr. Seidel's firm can represent both Mr. Seidel and his wife, such that he remains pro se. This argument was raised at the hearing. Tr. at 114 (The Court: Who is representing Gretta? Mr. Seidel: Mr. Hirsch (an associate with Mr. Seidel's firm). The Court: It doesn't say that in your papers.... You participated in the hearing and now you are going to testify. It is against

the canons of ethics. It is outrageous.). Mr. Seidel was and remains the only member of his firm to handle all matters in this contested matter. Accordingly, since Mr. Seidel's firm, *by* Mr. Seidel, is representing his wife, he cannot claim that he remains exclusively pro se.

**3.** Hereinafter, all statutory citations are to the 1993 source, except where otherwise indicated.

**4.** Mr. Seidel contends that "the bankruptcy court is not bound by the Model Code". Movant's Memorandum of Law in Support of Movant's Right to Testify as a Witness in the Proceedings, dated April 1, 1993, at 4. Disciplinary Rules, however, govern the conduct of all attorneys licensed to practice in New York State. Disciplinary Rules should not be inapplicable merely because an attorney is practicing before a United States Bankruptcy Judge. Additionally, since the Court finds the Disciplinary Rules incalculably persuasive to the very issues presented, it would be senseless to neglect their guidance or applicability.

The Court holds that the Disciplinary Rules provided in the New York Code of Professional Responsibility govern the issues as well as the conduct of the attorneys before it.

**5.** Disciplinary Rule 5–101 sets forth four exceptions, N.Y.Code of Prof.Resp. DR 5–101(B), which are discussed *infra* at I.D.

Prof.Resp. DR 5–102(b) (1993). Disciplinary Rule 5–102(b) provides, in relevant part:

> If, *after* undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on behalf of the client, the lawyer shall withdraw as an advocate before the tribunal. . . .

*Id.*[6] (emphasis added).

 We accordingly examine when Mr. Seidel knew that he would or ought to be called as a witness on behalf of his clients; this dictates which Disciplinary Rule applies.

As stated, the focus of the Vacatur Motion is to obtain an order vacating the Court's order authorizing the Sale of the assets of Hunter and Barkley to EDI. Mr. Seidel alleges that the Sale order should be vacated because Mr. Silverman, EDI's president, committed fraud and breached certain photography contracts he assumed when he purchased the Hunter and Barkley assets.

Mr. Seidel alleges that *he* is one of the customers of Hunter and Barkley that was defrauded. Mr. Seidel confirms his involvement in this matter writing that he: called principals of EDI numerous times, Application in Support of Order to Show Cause, dated May 4, 1992, at 4; agreed with Mel Appelbaum, a principal of EDI, for the processing of his order, *id.*; tendered funds in consideration of this agreement with Mr. Appelbaum, *id.*; and spoke to, negotiated, and sought relief from Mr. Silverman, *id.*

In addition, Mr. Seidel recorded a telephone conversation, the admissibility of which is addressed below, but which he contends vitally affects the outcome of the Vacatur Motion. Mr. Seidel writes:

> . . . [I] was not acting as an attorney when [I] recorded [my] personal conversations with Respondent. At the time of such conversations, [I] was one of many consumer creditors trying desperately to obtain from Respondent irreplaceable pictures of a one-in-a-lifetime event.

Movant's Reply to Respondent's Memorandum of Law, dated April 13, 1993, at 3.

It is plain that Mr. Seidel was an active participant in the events he alleges form the grounds for his Vacatur Motion. Due to his central role, the Court finds it unquestionable that Mr. Seidel knew that he would or ought to be called as a witness to testify *before* his undertaking employment in this proceeding. Therefore, the Court holds that DR 5–101 is applicable herein.

### C. Mr. Seidel's Ability to Testify to Matters Generally

Mr. Seidel's right to testify on behalf of his clients must be bifurcated into his right to testify as to matters generally, and his right to testify in a limited capacity.

 Mr. Seidel's right to testify in a general capacity is met with the prerequisite that he withdraw as an advocate before the Court. N.Y.Code Prof.Resp. DR 5–102(B) ("the lawyer *shall* withdraw as an advocate") (emphasis added; quoted *supra* at 435). But the right of an attorney to withdraw and then testify, however, is reserved to the innocent lawyer who becomes aware of the need to testify *after* the lawyer's involvement in the matter. *Id.* If the innocent lawyer ought to be called as a witness on behalf of the client, Disciplinary Rule 5–102(A) requires the lawyer to withdraw as an advocate before the tribunal. Once withdrawn from this representation, the lawyer may testify as a witness. *See id.*

 Disciplinary Rule 5–101(B), however, does not allow the lawyer to become a witness after withdrawal. Under this rule, the lawyer should never have accepted the employment. N.Y.Code Prof.Resp. DR 5–101(B). After improperly accepting the employment, the lawyer may not merely request permission to withdraw so that he or she may testify. *See id.*

The Court has held that Mr. Seidel was aware prior to his undertaking this matter that he would or ought to be called as a witness on behalf of his clients. Accordingly, the Court holds that Mr. Seidel may not simply withdraw and testify to matters gen-

---

**6.** Disciplinary Rule 5–102 contains the same four exceptions applicable to Disciplinary Rule 5–101, discussed *infra* at II.D. N.Y.Code of Prof.Resp. DR 5–102(A) (1993).

erally. *Id.* Though this is unfortunate, it is the result dictated by Mr. Seidel's actions.

### D. Mr. Seidel's Right to Testify in a Limited Capacity

Although Mr. Seidel may not withdraw to testify in a general capacity, he may testify in a limited capacity if one or more of four exceptions to Disciplinary Rule 5–101 apply. N.Y.Code Prof.Resp. DR 5–101(B).[7] He may not testify at all if none of the exceptions is applicable. Mr. Seidel contends that he should be permitted to continue his representation and testify pursuant to the exception provided in Disciplinary Rule 5–101(B)(2), Memorandum of Law in Support of Movant's Right to Testify as a Witness in the Proceedings, dated April 1, 1993, at 13; the exception is as follows:

> [A] lawyer may act as an advocate and also testify: ... If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

N.Y.Code Prof.Resp. DR 5–101(B)(2). Disciplinary Rule 5–101(B)(2) contains two prongs: the attorney's testimony must relate solely to a matter of formality, and there must be no reason to believe that substantial evidence will be offered in opposition to the attorney's testimony. *Id.*

■ Mr. Seidel informs the Court in his papers that he wishes to testify, in a limited capacity, in order to provide a foundation for the admission into evidence of the Recorded Conversation. Memorandum of Law in Support of Movant's Right to Testify in the Proceeding, dated April 1, 1993, at 14. Mr. Seidel proposes that any witness's testimony

to identify the voices contained in the recording will render it admissible.[8] *Id.* He argues initially that since *any* witness may testify to identify the voices, his act of giving such testimony constitutes a mere formality, satisfying prong one of Disciplinary Rule 5–101(B)(2). *Id.* We therefore first examine whether Mr. Seidel's giving testimony to identify the recorded voices constitutes a mere formality.

■ The cassette in question allegedly contains a tape-recorded telephone conversation between two persons. Mr. Seidel endeavors to testify to identify the two persons as himself and Mr. Silverman. Deeming this testimony as relating to a matter of "formality" necessarily indicates that giving such testimony would be, for example, "merely ceremonious". Webster's Third New International Dictionary 893 (1976). In this regard, an Ethical Consideration to the New York Code of Professional Responsibility provides guidance:

> Occasionally a lawyer is called upon to decide in a particular case whether the lawyer will be a witness or an advocate. If a lawyer is both counsel and witness, the lawyer becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his or her own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another,

---

7. The following are the four excepted situations where a lawyer may testify:

1. If the testimony will relate solely to an uncontested issue.
2. If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
3. If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the lawyer's firm to the client.
4. As to any matter, if disqualification as an advocate would work a substantial hardship

on the client because of the distinctive value of the lawyer as counsel in the particular case.

N.Y.Code Prof.Resp. DR 5–101(B). The Court addresses the applicability of the exception numbered two in the text above; the applicability of the other exceptions was neither raised nor alleged.

8. This is based, though, on an erroneous belief that the admissibility of the Recorded Conversation is contingent solely upon a witness's identification of the voices. The proper foundation required for the admissibility of the Recorded Conversation is addressed in the text below.

while that of a witness is to state facts objectively.

N.Y.Code Prof.Resp. EC 5–9. Employing this guidance and the common sense meaning of the words "solely to a matter of formality", the Court believes that the testimony must relate to a matter which is subject to little question, dispute, or cross-examination on the issue of credibility.

In the instant case, Mr. Seidel recorded the conversation. His testimony as to the identity of the persons whose voices he allegedly recorded, and as to whether these are the actual unaltered voices he recorded, is integral to the admissibility of the Recorded Conversation. Also, Mr. Seidel stresses that the voice of the other person belongs to his adversary. Certain items, including his credibility as a witness, or the substantive bases for his testimony, will necessarily be subject to attack by his adversary or others. For these reasons, a meaningful cross-examination must be available to Mr. Seidel's adversary. If the Court were to rule that Mr. Seidel's offer of testimony regarding the Recorded Conversation relates solely to a matter of formality, the Court would effectively be deeming a cross-examination needless and (presumably) not allowed. We will not prevent cross-examination. The Court cannot hold, accordingly, that Mr. Seidel's offer of testimony regarding the Recorded Conversation will relate solely to a matter of formality.

■ Prong two of Disciplinary Rule 5–101(B)(2) requires a determination that "there is no reason to believe that substantial evidence will be offered in opposition to [Mr. Seidel's] testimony". N.Y.Code Prof.Resp. 5–101(B)(2). Mr. Seidel has provided the Court with no basis to so hold.[9] Also, our analysis under prong one is relevant: Since Mr. Seidel will make an interested witness, and the Court has found that his adversary could attempt to impeach him and attack his testimony on various grounds, and that his

giving testimony will not constitute solely a matter of formality, we cannot hold that there is no reason to believe that substantial evidence will not be offered in opposition; his argument under prong two accordingly fails. Since neither prong of Disciplinary Rule 5–101(B)(2) is satisfied, the Court holds that Mr. Seidel may not testify in a limited (or general) capacity to the issues at bar.

## II. Admissibility of a Recorded Conversation

■ The next issue before the Court is the admissibility into evidence of the Recorded Conversation which Mr. Seidel alleges took place between himself and Mr. Silverman. Several rules govern the admissibility of a recorded conversation. The Court will consider: (i) the admissibility, in general, of a recorded conversation,[10] (ii) the admissibility of a conversation recorded *without* consent of all parties to the conversation, and (iii) the admissibility of a conversation recorded by an attorney presently litigating the matter without knowledge or consent of the other parties to the conversation.

### II(i). Admissibility of Tape–Recorded Conversations Generally

■ Conversations recorded onto tape are customarily acceptable as evidence so long as they are admissible under the Federal Rules of Evidence generally, *e.g., U.S. v. Watson,* 594 F.2d 1330, 1334 (10th Cir.1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979) (recording must be relevant and not privileged), and a proper foundation is laid, *id.; see generally People v. Arena,* 65 A.D.2d 182, 411 N.Y.S.2d 466 (1978).

■ The foundation is laid by establishing the following:

---

**9.** Mr. Seidel did write, on this issue, that "Little in the way of substantive testimony or credibility will be at issue or could be impeached." Memorandum of Law in Support of Movant's Right to Testify in the Proceeding, dated April 1, 1993, at 14. This opinion of his adversary's trial strategy in response to his proposed testimony carries little weight.

**10.** Other evidentiary rules, such as the proscription against hearsay, will apply to the contents of the conversation. Any evidentiary rules or prerequisites applicable to the conversation itself will not now be addressed, though, as the conversation's contents are not presently before the Court.

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that has been shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*U.S. v. Sliker,* 751 F.2d 477, 500 (2d Cir. 1984); *U.S. v. Fuentes,* 563 F.2d 527, 532 (2d Cir.1977) (seven listed elements are not rigid requirements but are factors for consideration in connection with specific circumstances of particular case); *U.S. v. McKeever,* 169 F.Supp. 426, 430 (S.D.N.Y.1958) (citations omitted); *see also U.S. v. Willis,* 774 F.2d 258, 259 (8th Cir.1985); *U.S. v. McCowan,* 706 F.2d 863, 865 (8th Cir.1983); *U.S. v. Brown,* 604 F.2d 557, 560 (8th Cir.1979).

## II(ii). Admissibility of Conversation Tape–Recorded in Absence of Consent of All Participants

■ Neither Mr. Seidel nor Mr. Silverman, nor any party to this Vacatur Motion, has disputed that the Recorded Conversation was acquired without the consent of any person with whom Mr. Seidel was allegedly conversing. Nevertheless, recordings acquired without the consent of all conversing parties, though subject to the above multi-part foundation, are not inadmissible solely due to lack of complete consent. *On Lee v. U.S.,* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *Frank v. Bloomcraft,* 1990 WL 55700, at *2 (S.D.N.Y. April 19, 1990); *People v. Gibson,* 23 N.Y.2d 618, 298 N.Y.S.2d 496, 497, 246 N.E.2d 349, 350 (1969), *cert. den.,* 402 U.S. 951, 91 S.Ct. 1628, 29 L.Ed.2d 121 (1970); FISCH ON NEW YORK EVIDENCE § 734 (2d ed. 1977). The third and final item for the Court's consideration concerns Mr. Seidel's role when he procured the Recorded Conversation.

## II(iii). Admissibility of a Conversation Tape–Recorded Without Knowledge or Consent of Other Party(s) to the Conversation by an Attorney Presently Litigating the Matter

■ Having addressed the general issues governing the admissibility of the Recorded Conversation, the Court must confront its admissibility in light of Mr. Seidel's role in this case. Mr. Silverman has argued that an attorney admitted to practice law is barred from recording any conversation without consent of the other party(s). Thus, he argues, the Recorded Conversation should not be admitted into evidence simply because it derives from Mr. Seidel's improper conduct. We first address the propriety of an attorney recording a conversation on tape, without the consent or knowledge of the other person(s) with whom the attorney is conversing.

The Committee on Ethics and Professional Responsibility of the American Bar Association ("ABA Committee") has provided guidance on this issue. The ABA Committee denounces the recording of any conversation by an attorney, without the consent of other parties to the conversation. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 337 (1974) (citing N.Y.Code Prof. Resp. DR 1–102(A)(4); N.Y.Code of Prof. Resp. Ethical Considerations 1–5, 4–4, 4–5, 7–1, 9–2, 9–6). The ABA Committee's rationale for this criticism derives from its supposition that such actions may be dishonest or involve fraud, deceit or misrepresentation. *See id.* Furthermore, such actions may conflict with the conduct encouraged by pertinent Ethical Considerations of the Model Code of Professional Responsibility. Specifically, for example, "A lawyer should maintain high standards of professional conduct.... and should refrain from all ... morally reprehensible conduct. Because of a lawyer's position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession." N.Y.Code Prof.Resp. EC 1–5; *see also id.* EC 9–2 ("Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to a

non-lawyer to be unethical.... When explicit ethical guidance does not exist a lawyer should determine prospective conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.").

The ABA Committee's directives are narrowed, though, because its opinion focuses almost exclusively upon this conduct when taken by actually *engaged* attorneys. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 337 (1974). Formal Opinion 337 construes the propriety of attorneys who record conversations with their clients, with other attorneys, and the public such as witnesses, public officials, or others. *Id.* It appears that the ABA Committee's denouncement and its rationale does not apply in the context of an attorney acquiring the recording while not engaged in the representation of a client. *See id.*

█ The Court's construction of the ABA Committee's Formal Opinion 337, and the few cases that address this issue, lead the Court to hold that a recording is not inadmissible solely because *obtained by an attorney.* *See id.* (citations omitted); *see also* N.Y. State Bar Assoc. Prof. Ethics Comm. Op. 328 (denouncement focusing on conduct of engaged attorneys only); *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 108 F.R.D. 686, 690 (S.D.N.Y.1985); *Parrott v. Wilson,* 707 F.2d 1262, 1272 (11th Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *Wilson v. Lamb,* 125 F.R.D. 142, 143 (E.D.Ky.1989); *Haigh v. Matsushita Elec. Corp. of Amer.,* 676 F.Supp. 1332, 1356-57 (E.D.Va.1987) (Note that in these cases, while the courts allowed tape-recorded conversations into evidence on other grounds, it is stated that it was done so primarily to prevent injustice.).

Accordingly, only if the attorney is actually engaged at the time the recording is obtained is the deed inauspicious. The proscription against an attorney acquiring a recording *while engaged* in a matter, without full consent of the conversing parties, should contain a self-evident rationale. The behavior appears at least surreptitious. It can decrease confidence in attorneys and inhibit the public's desire to speak openly. Allowing such behavior could also be an enticement to attorneys to "create" evidence, rather than discuss or negotiate for other more desirable results. Preventing this behavior also protects attorneys. An attorney recording his or her conversation must tread a thin line since the desire to "trap" the other party rather than to simply learn or discuss for other good faith reasons could become difficult to suppress. For these valid grounds, the behavior should not be allowed except, for example, to prevent injustice.[11] *See id.*

But a *non*-lawyer is not burdened with these proscriptions. The issue in the case at bar pivots upon this distinction.

Mr. Seidel obtained the recording three years prior to becoming an attorney engaged in this matter. As Mr. Seidel contends, without real opposition,[12] he was at that time acting as a layperson attempting to obtain his wedding photographs from Hunter Studios, Inc., or from the purchaser of that entity, Mr. Silverman and EDI. The Court does not now see fit to prevent a person from perpetuating a conversation by recording it merely because that person is admitted to the bar. The unfavorable characteristics of the action when taken by an attorney engaged in the representation of someone other than her or himself, are not present when taken by a layperson or non-engaged attorney. The non-engaged attorney should have the same rights as the layperson (though the attorney's actions may be subject to increased scrutiny for all the reasons discussed). Though the behavior is not exemplary, and in another case might not be tolerated, it will not by itself render the Recorded Conversation inadmissible.

---

11. The Court is aware, though, that this issue is not presently before the Court.

12. Mr. Silverman did not effectively refute this contention. *See* Memorandum of Law of Mr. Silverman in Opposition to Movant's Right to Testify at a Witness in this Proceeding, dated April 8, 1993, at 5 (simply asserting that Mr. Seidel never argued that he was a layperson and raising another contention which was taken out of context). The facts are controlling, though, and it is clear that Mr. Seidel was acting as a layperson.

For the reasons given, the Court holds that (1) Mr. Seidel's capacity in this case is as an attorney representing clients which include his wife and others (whom he did not name); (2) Mr. Seidel knew that he would or ought to be called as a witness to testify *before* the commencement of this proceeding; (3) regardless of whether or not he withdraws from his representation of his wife and the others, Mr. Seidel may not testify in a limited or general capacity to the issues addressed herein; (4) notwithstanding the fact that it was obtained by Mr. Seidel, an attorney, the Recorded Conversation is not inadmissible per se; (5) if its proponent lays a proper foundation, the Recorded Conversation may be admitted into evidence; and (6) the parties are directed to appear before the Court on March 1, 1994 at 9:30 a.m., or as soon thereafter as counsel may be heard, to apprise the Court of the status of the case in light of this decision and order.

**SO ORDERED.**